In re **PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.**

**Bankruptcy No. 88–00043.**

United States Bankruptcy Court, D. New Hampshire.

April 18, 1989.

Richard Levin, for Public Service Co.

Michael S. Schneider, New York City, J. Michael Deasy, Nashua, N.H., for Unsecured Creditors Committee.

Richard Tilton, Columbus, Ohio, for Equity Committee.

Larry M. Smukler, Sr. Asst. Atty. Gen., Concord, N.H., Mark W. Vaughn, Manchester, N.H., for State of N.H.

George J. Wade, Barbara J. Gould, New York City, for Citicorp and Consolidated Utilities & Communications, Inc. (CUC).

Daniel M. Glosband, Boston, Mass., for United Illuminating, New England Power, EUA Power Corp., Canal Elec. Co., Connecticut Light & Power Co., and Montaup Elec. Co.

Peter V. Doyle, West Springfield, N.H., for First Fidelity Bank and Amoskeag Bank.

Dennis J. Kelly, for MMWEC.

Jeffrey G. Grody, Hartford, Conn., for Northeast Utilities Service Co.

Anne M. Pare, Augusta, Me., George J. Marcus, Portland, Me., for Cent. Maine Power Co.

David W. Marshall, Concord, N.H., for NEES.

Noel E. Hanf, New Haven, Conn., for United Illuminating Co.

## AMENDED ORDER APPROVING SEABROOK COMPREHENSIVE SETTLEMENT

JAMES E. YACOS, Bankruptcy Judge.

Public Service Company of New Hampshire filed its Motion For Order Approving Comprehensive Seabrook Settlement, with supporting Declarations and a Memorandum of Law. Certain objections were filed

to the granting of the Motion and the approval of the settlement. A hearing was held on the Motion and on the objections on April 14, 1989, at which evidence and argument was presented. At the conclusion of the hearing, this Court dictated into the record its findings of fact and conclusions of law [Subsequently the court has revised its findings and conclusions to a limited extent, for clarity and continuity, as indicated in the attached Annex.] Based on the record in this case and the findings and conclusions made as indicated, and good cause appearing, it is

ORDERED:

1. The Motion For Order Approving Comprehensive Seabrook Settlement is granted.

2. Public Service Company of New Hampshire is authorized and directed to take such action as is required to consummate the transactions contemplated under the Memorandum of Understanding, the Settlement Agreement, and the Twenty–Second Amendment to the Joint Ownership Agreement, which are described in the Motion and the supporting Memorandum and copies of which were introduced into evidence at the hearing on the Motion, and to execute such other documents as are required to carry out those agreements.

3. Public Service Company is authorized to waive the conditions to the Effective Date of the Memorandum of Understanding or of the Settlement Agreement to the extent that the conditions require the agreement by New Hampshire Electric Cooperative, Inc., Vermont Electric Generation and Transmission Cooperative, or Hudson Light and Power Department to release or covenant not to sue Public Service Company.

### ANNEX

### REVISED COMMENTS FROM HEARING HELD APRIL 14, 1989 ON MOTION FOR ORDER APPROVING COMPREHENSIVE SEABROOK SETTLEMENT [Court Paper 1698] (In re Public Service Company of New Hampshire, BK # 88–00043)

Basically I start with the proposition that the court in approving a settlement is not required to try the matter that may be litigated. There is a caveat to that I think in the reorganization court, to the extent that I think that reorganization courts have to do a little bit more along the lines of evaluating the settlement vis a vis the ultimate plan that may come forward in the court, otherwise you could have the tail wagging the dog contrary to the intent of Congress in its structure of chapter 11. In other words if the settlement were a massive portion of the financial problems of the debtor in reorganization then in resolving those problems by settlement it wouldn't leave much for the reorganization process per se to handle under the formulation and confirmation standards of chapter 11 of the Code

I need to address that question because even though all parties in interest in this estate have now joined in supporting the settlement I think the court still has to independently make a determination whether the settlement is appropriate. I think that is why the Supreme court cases keep using the language "fair and equitable" in approving settlements in reorganization proceedings—because it is a fact that any settlement in any reorganization case in effect does avoid the requirements for confirmation of a plan or bends those requirements in a sense. In such a case whatever plan that is going to be ultimately proposed and confirmed has to take into account the accomplished fact of the settlement, which may or may not be something that could meet all the strict requirements of confirmation of plan.

In this case obviously the treatment of the prepetition claims in a sense might not pass muster under 1129, but when you have a compromise and settlement in a chapter 11 I don't think it's any secret that the courts have authorized those settlements to eliminate obstacles to ultimate successful reorganization when it's appropriate. It's a matter of balance and it's a matter of proportion. In this case I find that the matters being settled do not dictate in an inappropriate manner the remain-

ing issues for resolution in a reorganization plan.

I view this basically as evaluating whether the buy-back agreement cancellation in effect supports this settlement. I realize that there are various allegations about prudence claims but I must say that on this record that is all they are—rather amorphous arguments about prudence or lack of prudence with not too much detail as to what might be involved there. There have been some reports and studies on that, but they are all over the field as to what mismanagement or prudency claims might be asserted. There is also an exculpatory clause that as a matter of law might preclude any such claims. It is also not at all clear in my judgment that the parties that might assert those claims would really undertake litigation of that magnitude for that type of claim. Against that last comment, however, is the fact that these are all public entities that might be pressured to take such a claim—or assert such a claim if another one of them asserts it—just because the regulatory climate in which they operate might force them to assert such claims regardless.

In any event I kind of down-play the prudency claims as a ground for approving the settlement except in the sense that the very initiation of such litigation (whether it would ultimately be pursued to completion) would I think create some obstacle to the ultimate licensing of Seabrook. It would have a disruptive effect where the joint owners are no longer marching in lockstep toward full commercial operation of Seabrook. I think that would impact what happens in the NRC. So in that sense the prudency claim does have some relevance, but not in the sense that I can make a finding here that there is a one billion dollar exposure here. I don't know that it is. I do know that from what I've heard that the cost of litigating it, regardless of percentage of ownership, is probably going to be around $25 million.

The other major point or benefit under the settlement is to cancel the buy-back agreement under the agreement with MMWEC.* In that regard, if Seabrook goes into operation there is an obvious value to this estate of getting rid of the buy-back agreement. That unavoidably raises the question of whether it is likely that Seabrook will go on line—a question that I have danced around myself when given the chance to do so. If it were unlikely that Seabrook is going to go on line then I would say why approve this settlement, or if it is to be approved, why approve it now until its more clear whether Seabrook is going to go on line because that $210 million dollar matter may go away if Seabrook doesn't go on line.

In my judgment based on what I've heard on this record, and in this case in general, recognizing that I do not have any desire to examine the record before the NRC and its boards on all the environmental and safety issues, I think I can make a finding based on this record, for present purposes only, that it is likely that Seabrook will go into commercial operation and thus trigger the buy-back clause, and in that sense the benefit of cancelling the buy-back agreement is a substantial benefit to this estate supporting the settlement proposals.

With regard to the issues raised by the *Mabey* case, *Official Committee of Equity Security Holders v. Mabey*, 832 F.2d 299 (4th Cir.1987), on the question of paying prepetition claims outside of a plan of reorganization, I think Mr. Levin did make the appropriate distinction in his argument, i.e., what was proposed there was simply a sort of prepayment of part of those claims and not a waiver of any rights by the claimants. They actually wanted to provide medical services to the claimants. Here we have a true compromise and settlement of claims and the fact that these third parties are getting cash from this estate does not mean that they're being paid on a different basis than other creditors.

What is being done here is a resolution of disputed matters that results in a certain payment to them. That happens in every

---

* I realize there are a lot of others that I'm not going to touch on in detail. The briefs do that and I will adopt the debtor's analysis on the minor points in their briefing.

compromise and settlement that happens along the way toward a reorganization plan in a chapter 11 case, and I think that by itself does not as a matter of law preclude approval of compromise and settlement outside of a plan of reorganization. If it did there are many Chapter X cases under the old Act and many chapter 11 cases under the present Code that should not have been confirmed, or the compromises and settlements that led to the reaching of a successful reorganization should not have been approved.

It's the very availability of a device for resolving obstacles to reorganization by the compromise and settlement method that provides necessary flexibility in chapter 11 and often makes successful reorganizations possible. It's the job of the court however to draw a line between an appropriate use of the pre-plan compromise and settlement device, as opposed to in effect doing the whole plan in the pre-plan mode, and I think that is what I'm paid to do and I think that is what I'm doing here. I shouldn't forget to add that all the parties in this estate agree with the settlement. That is a factor in this court believe it or not.

I will find that the settlement is fair and equitable to the parties in interest in this estate and that it is within the range of results of litigation reasonably expectable in the matters involved. I further will find that damage to this estate from Seabrook delay clearly outweighs the relatively small cost of this settlement, or the perhaps increased benefits that might be obtained by renegotiating toward a better one. I do believe that if this settlement is not approved it will present substantial obstacles to the ultimate licensing of the Seabrook plant, and from an economic basis I think the costs of this settlement as I say are clearly overbalanced by the benefits of completing the Seabrook licensing process as soon as possible. I think those are the findings I need to make to support my decision. If somebody thinks I haven't addressed a major point speak now or forever hold your peace.

Hearing nothing I will simply have an order incorporating by reference my findings and conclusions and adding that additional provision that Mr. Levin mentioned. Submit it Monday.