**In the Matter of the COLUMBIA GAS SYSTEM, INC., and Columbia Gas Transmission Corporation, Debtors.**

**Bankruptcy Nos. 91–803, 91–804.**

United States Bankruptcy Court, D. Delaware.

Aug. 9, 1994.

Kevin Gross, Rosenthal, Monhait, Gross and Goddess, P.A., Wilmington, DE, and James F. Bendernagel, Jr., Larry J. Nyhan and Linda S. Portasik, Sidley & Austin, Washington, DC, for Official Unsecured Creditors' Committee of Columbia Gas Transmission Corp.

James L. Patton, Jr., Young, Conaway, Stargatt & Taylor, Wilmington, DE, Lewis Kruger and Robin Keller, Stroock & Stroock & Lavan and John P. Hunt, Cravath Swaine & Moore, New York City, for debtors.

Stephen W. Spence, Phillips Goldman & Spence, Wilmington, DE and John J. Dilenschneider, Squire, Sanders & Dempsey, Columbus, OH, for Columbia Gas of Kentucky, Inc., Columbia Gas of Ohio, Inc., Columbia Gas of Pennsylvania, Inc., Columbia Gas of Maryland, Inc. and Commonwealth Gas Services, Inc.

Francis J. Trzuskowski, Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, DE, and Roger M. Whelan, Leslie A. Nicholson, Jr., Alan G. Fishel and Mark H. Berman, Shaw, Pittman, Potts & Trowbridge, Washington, DC, for Official Committee of Customers of Columbia Gas Transmission Corp.

Eileen M. Ford, Froehlich, Healy & Locke, Newark, DE, for Consumer Advocate Div., Public Service Com'n, of West Virginia, Maryland Office of Peoples Counsel, Maryland Public Service Com'n, Ohio Office of Consumers' Counsel, Pennsylvania Office of Consumer Advocate, Pennsylvania Public Utility Com'n and Public Service Com'n of State of N.Y.

Ellen W. Slights, Asst. U.S. Atty., Wilmington, DE, and Stuart Gibson and Karl Fingerhood, U.S. Dept. of Justice, Tax Div., Washington, DC, for I.R.S.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

The Columbia Gas Transmission Company (TCo) moves this court for an order approving a settlement of TCo's 1990 rate case before the Federal Energy Regulatory Commission (the settlement motion). TCo's customers, various state agencies, and the cities of Charlottesville and Richmond in Virginia support the motion. Opposed to the motion are the United States of America and the Official Committee of Unsecured Creditors of TCo. The central dispute concerns whether TCo may pay now certain settlement monies that relate to pre-petition obligations. This is the court's Opinion on this core proceeding. 28 U.S.C. § 157(b)(2)(M).

### I. Facts

The parties have filed a statement of issues and a joint stipulation of facts, and agree that the stipulation is sufficient for the court to adjudicate the settlement motion. The following facts appear in that stipulation.

TCo is an interstate pipeline. Its rates, charges, services and facilities are subject to regulation by the Federal Energy Regulatory Commission. The FERC's authority derives from the Natural Gas Act. A detailed discussion of this regulatory scheme as it applies to TCo already exists. *In re Colum-*

*bia Gas Systems Inc.*, 997 F.2d 1039, 1051–52 (3d Cir.1993) ("*Columbia Gas II*").

On April 30, 1990, TCo filed a rate increase with the FERC. FERC Docket No. RP90–108–000 ("the RP–90 case"). The FERC allowed the filed rates to become effective on November 1, 1990, subject to refund. These rates were effective for thirteen months (on December 1, 1991, new rates went into effect pursuant to a subsequent filing by TCo).

TCo's proposed rate increase was opposed by several entities, including the Maryland Peoples' Counsel, the Ohio Consumers' Counsel and the Pennsylvania Office of Consumer Advocate. Commencing in May 1990, and continuing into November 1991, TCo and other interested parties in the RP–90 case created a full record through the submission of documents and written testimony. In April 1992, TCo, the FERC staff, and the active parties entered into a settlement of the RP–90 case.

The settlement, among other things, establishes a settlement rate for the thirteen month period. Because this rate is lower than the rate TCo filed and collected from its customers, the settlement requires TCo to refund to its customers approximately $58 million plus interest. The various provisions of the settlement, including the payment of the refunds, are not severable.

On October 15, 1992, the FERC issued an order approving the settlement. This approval satisfied one of the conditions precedent to the effectiveness of the settlement.

The settlement remains subject to "any necessary" Bankruptcy Court approval. The settlement becomes void if this court takes any action which would prevent TCo from paying the full amount of the refunds.

## II. *Discussion*

### A. *Introduction.*

TCo filed its Chapter 11 petition in this court on July 31, 1991. Thus, nine of the 13 months covered by the RP–90 case occurred pre-petition. Of the total refund amount, approximately $35 million plus interest relates to this pre-petition period. Approximately $23 million relates to the four month post-petition period. There is no confirmed plan in TCo's Chapter 11 case. The proponents of the settlement motion emphasize that an essential part of the settlement is that TCo receive approval from the Bankruptcy Court to pay *all* the refunds now.

TCo also emphasizes that it seeks "any necessary" Bankruptcy Court approval, since it takes the position that court approval of FERC settlements are generally not necessary. Indeed, the issue of whether in general, court approval of FERC settlements is required has not been briefed by any of the parties, and the court will not address it. TCo seeks court approval of the RP–90 settlement only because the settlement requires TCo to use estate property to pay pre-petition claims. Case no. 91–803, docket no. 2395 at 11.

The United States and the Official Committee of Unsecured Creditors of TCo have succinctly stated the narrow scope of issues presently before the court:

> The United States and the Committee do not object to TCo and its customers terminating their litigation and fixing the amount of the customers' refund claims. Nor do the United States and the Committee object to immediate payment of claims arising from TCo's post-petition rate collections. The United States and the Committee do, however, oppose TCo's request to pay claims arising from TCo's pre-petition rate collections in advance of a plan that deals equitably with all pre-petition claims against the estate.

Docket no. 3322 at 1–2 (emphasis omitted).

Two other issues have also been eliminated from court consideration. The proponents of the motion concede that TCo does not hold refund monies in trust, and that the necessity of payment doctrine is not satisfied.

### B. *The Necessity of Payment Doctrine is the Applicable Standard.*

The settlement requires TCo to pay pre-petition obligations with property of TCo's estate. Thus, initially, the court must determine the appropriate standard for allowing such a payment.

█ The appropriate standard has been articulated *twice* in prior rulings of this

court, coincidentally in this same Chapter 11 proceeding. This court denied a motion by TCo to pay $15 million to certain gas producers to settle pre-petition claims, stating:

> [T]he payment would be one that favors one class of unsecured pre-petition creditors over another. TCo suggests ... that the applicable legal standard to justify this payment is that ... the payment is in the best interest of the estate.... This is not the standard. In the Third Circuit the law is clear that to justify payment of one class of pre-petition creditors in advance of a confirmed plan, the debtor must show that payment is essential to the continued operation of the business.

*In re Columbia Gas Transmission,* Case no. 91–804, docket no. 837 at 82–83 (December 12, 1991) (the *Enterprise Energy* ruling) (citing *In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir.1981)). The standard stated in the *Enterprise Energy* ruling is commonly referred to as "the necessity of payment doctrine." This doctrine, and its general applicability, was reiterated in *In re Columbia Gas System, Inc.,* 136 B.R. 930, 939 (Bankr.D.Del.1992) (*Columbia Gas I*).[1]

Apparently, TCo believes that it is exempt from the doctrines of *stare decisis* and the law of the case, *e.g., In re Harvard Indus.,* 153 B.R. 668, 671 (Bankr.D.Del.1993), for TCo now asserts that the necessity of payment doctrine applies only to pre-petition suppliers or employees who are refusing to cooperate with the debtor absent immediate payment. TCo further argues that here, a "best interests of the estate" standard is available to justify the immediate payment of a pre-petition obligation that the settlement motion contemplates.

As legal support for this proposition, TCo does not point to any limiting language in the *Enterprise Energy* ruling, or the *Columbia Gas I* case, and indeed, none exists. TCo also offers no doctrinal reason why the payment of pre-petition refund obligations to its customers should be considered under a different standard.[2]

Instead, as legal support, TCo relies upon superfluous language contained in one order in another Chapter 11 case in this court that approved a joint motion for the payment of pre-petition fees and expenses of a professional entity. That motion, case no. 92–115, docket no. 1000, this court's order approving that motion, docket no. 1040, and the United States District Court's affirmance of that order were all legally premised on section 503(b) of the Bankruptcy Code. *In re Trans World Airlines, Inc.,* 1993 WL 559245 at 7–8, 17–18 (D.Del. June 22, 1993). Thus, the excerpt from that order stating that payment of those fees and expenses was "in the best interest of TWA's estate," docket no. 1040, has nothing to do with the applicable standard. Indeed, it is hard to believe that TCo could in good faith argue otherwise.

In its reply brief, TCo cites for the first time *In re Public Service Co. of New Hampshire,* 107 B.R. 441, 446 (Bankr.D.N.H.1989) for the proposition that pre-petition deposits owing to customers of a utility can be paid in advance of a plan. That court's discussion was in the context of a recoupment theory and has no application here.

In its reply brief, TCo also cites for the first time *In re Public Service Co. of New Hampshire,* 99 B.R. 510, 512–13 (Bankr. D.N.H.1989). In that case, the court approved a settlement. All parties in interest ultimately supported the settlement. *Id.* at 511, 513. In its comments approving the settlement, the court considered *sua sponte* whether the payment of pre-petition claims violated 11 U.S.C. § 1129. *Id.* at 511. Ultimately, the court found no violation, applying essentially its own version of the necessity doctrine. Thus, to the extent the *Public Service* court's comments have *stare decisis* effect, those comments do not support TCo's position in the settlement motion.[3]

---

1. While this court's decision in *Columbia Gas I* was appealed several times, the reviewing courts never modified this specific rule of law.

2. As a practical matter, TCo's asserted best interests of the estate standard would swallow up the necessity of payment doctrine, thus eliminating controlling precedent.

3. TCo also argues for the first time in its reply brief that the settlement motion must be approved because of the "unique nature of this case." This argument is equally without merit.

C. *TCo's Best Interest of the Estate Argument is Without Merit.*

TCo's first argument in support of the settlement motion is that the settlement is in the best interests of the estate. As discussed above, assuming this argument is correct as a factual matter, it does not provide a legal basis for this court to approve the settlement motion.

D. *The Other Arguments in Support of the Motion are Without Merit.*

1. *The FERC Decision.*

In the alternative to the best interests standard, TCo asserts that "an independent basis" exists to approve the settlement motion. Also, various state agencies (in separate briefing) have propounded what they characterize as yet another independent basis for approving the settlement. In connection with these arguments, it is appropriate at this point to discuss the FERC's October 15, 1992 seven page order approving the settlement. *Columbia Gas Transmission Corp.*, 61 FERC (CCH) ¶ 61,066 (1990) ("the FERC Order").

After TCo filed its proposed settlement in the RP–90 rate case, certain parties filed comments opposing the settlement. Specifically, the Official Committee of Unsecured Creditors of TCo raised the question of "whether the Commission should stay Columbia's tariff provisions that would otherwise require Columbia to make refunds arising out of the settlement." FERC Order at 61,272. The FERC determined that it need not reach that issue, reasoning as follows:

> The parties supporting the settlement have agreed that Columbia will not disburse any refunds prior to authorization by the bankruptcy court. Thus, the settlement itself is structured in such a way that all issues concerning the effect of Columbia's bankruptcy filing on its ability to make these refunds and on the Commission's right to require such refunds pursuant to its NGA authority may be resolved by the courts before any refunds are actually made. The Commission's approval of the settlement represents a finding ... that the rates ... are just and reasonable. **However, since the settlement does not re-**

**quire payment of refunds at this time, the Commission is not now ordering the payment of any refunds.** Thus, the [Committee of] Unsecured Creditor's request for stay of any refund requirement is unnecessary.

FERC Order at 61,272–73 (emphasis added).

2. *No Exception to the Automatic Stay Allows the Refunds to be Paid at This Time.*

■ TCo contends that there exists "an independent basis" to approve the settlement motion. This contention revolves around TCo's construction of statutory exceptions to the automatic stay of 11 U.S.C. § 362(a). Those exceptions state:

> **(b)** The filing of a petition under section 301 ... does not operate as a stay—
>
> (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
>
> (5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

11 U.S.C. § 362(b)(4) & (5). TCo spends seven pages in its brief arguing that either or both subsections apply to allow TCo to make the payments contemplated by the settlement motion.

The problem with this argument, as the objectors point out, is that there is no FERC order or judgment in the RP–90 case requiring TCo to pay the refund monies. The FERC issued an order finding that the settlement rates were just and reasonable. The FERC recognized that the settlement contemplated the refund of about $58 million; however, the FERC did not order payment of the refund monies. Thus, the asserted "independent basis" for approval of the settlement motion is without merit.

3. *The State Agencies' Arguments are Without Merit.*

■ The state agencies also raise several arguments which they assert provide an independent ground to approve the settlement

**194**

and allow the immediate payment of the $58 million in refunds. These arguments will be addressed collectively. The state agencies argue that the language of the NGA and the important federal policies underlying the NGA mandate approval of the settlement. The state agencies suggest that the FERC ordered the immediate payment of refunds. Case no. 91–803, docket no. 3282 at 6, 8–9. The state agencies argue that disapproval of the settlement would result in court "approval" of unjust and unreasonable rates, and would interfere with and override the jurisdiction of the FERC.

The important policies underlying the NGA do not justify the relief sought in the settlement motion. The FERC did not order the immediate payment of any refunds. *See supra* Section II.D.1. The FERC has already ruled on the reasonableness of the settlement rate, and that ruling will of course be respected. If the parties choose to void the RP–90 settlement, the reasonableness of TCo's rates for the 13 month period will be decided in a proceeding before the FERC. The issue of how TCo's RP–90 refund obligations will ultimately be treated is not before the court.[4] In summary, the court finds the state agencies' arguments in support of the settlement motion to be without merit.

E. *Conclusion.*

As there is no legal basis to approve the settlement, there is no need to address the various ancillary issues that the parties have raised. An order in accordance with this Opinion is attached.

### ORDER

AND NOW, August 9, 1994, for the reasons stated in the attached Memorandum Opinion, the motion of the Columbia Gas Transmission Company for an order approving a settlement of TCo's 1990 rate case before the Federal Energy Regulatory Commission and authorizing payment of settlement is **DENIED.**

---

4.  Presently, the claims arising out of these refund obligations are addressed in the plan TCo filed. The plan characterizes those claims as impaired.

Docket no. 1055 at 34–35, 51–54. The state agencies characterize the treatment as payment in full. Docket no. 3282 at 6 n. 8.