## In re EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.

### Bankruptcy No. 1–91–00100.

United States Bankruptcy Court, S.D. Ohio, W.D.

March 15, 1991.

Stephen Karotkin, Weil, Gotshal & Manges, New York City, Edmund J. Adams, Cincinnati, Ohio, for debtors.

G. Christopher Meyer, Cleveland, Ohio, for Unsecured Creditors' Committee.

Kevin Irwin, Cincinnati, Ohio, for Injury Claimants' Committee.

James Ralston, General Counsel, Eagle–Picher Industries, Cincinnati, Ohio.

Daniel M. Katlein, Dickinson, Wright, Moon, Van Duesen & Freeman, Detroit, Mich. for NDB Bank.

William Hayden, Susan Fischer, Cincinnati, Ohio.

Neal J. Weill, U.S. Trustee's Office, Cincinnati, Ohio, for co-defendants of debtors in asbestos personal injury lawsuits.

## DECISION ON MOTION OF DEBTORS–IN–POSSESSION RE PRE–PETITION TOOLING

BURTON PERLMAN, Chief Judge.

In these jointly administered Chapter 11 cases, debtors have filed a motion for an

order authorizing the payment of pre-petition obligations to toolmakers who have provided tooling to various divisions of debtors. An objection to the motion was filed by the Injury Claimants' Committee ("Committee"). The motion came on for hearing. This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A) and (O).

Briefly stated, it is the position of debtors that the payments which they seek to make, amounting to $931,000.00, should be authorized, notwithstanding that they arise on account of a pre-petition debt, because the failure to do so will seriously jeopardize ongoing business relationships with customers of debtors. The Committee, on the other hand, contends that, first, payment of pre-petition unsecured debts simply may not, under the law, be paid. Further, it is the contention of the Committee that even if such payments can be authorized, an inadequate showing of jeopardy has been made, insufficient to justify the depletion of property of the estate in the magnitude requested by debtors.

From the record made in this matter, we find the following facts. Divisions and subsidiaries of debtors are heavily involved with the automobile industry as a supplier of parts. A major automobile manufacturer, which is a customer of debtors, is reducing its purchases by a third. Debtors also deal with a very important foreign segment of the automobile industry which is unaccustomed to chapter 11 procedures and tends to think them dishonorable. These considerations create an extremely competitive environment. A mode of operation in the business of debtors may be described as follows. When debtors become aware that a job to manufacture a part is up for bid, debtors submit a quote on the part to be manufactured, and a separate quote for the tooling to make the part. If the contract is awarded to the debtors, two separate purchase orders will be issued to debtors, one for the part manufactured, and the other for the tooling. Debtors then will award a contract to a toolmaker who will make the necessary tooling. When the

customer approves a job, its payment to debtors will include the toolmaker's charge. Debtor normally will turn around and pay that amount over to the toolmaker. It is understood by everyone that the tooling belongs to the customer.

After the filing of the chapter 11 case, and the failure by debtors to pay certain toolmakers, instances have occurred where a toolmaker has gone directly to a customer and complained about the failure of payment. This has made the customer unhappy and has led to threats to pull business from debtors. Debtors have extremely aggressive competitors and considerations such as those just stated are disadvantageous to debtors in the competitive struggle particularly now that competition for automotive business is so intense, for the reasons stated above.

A further fact finding is that the Unsecured Creditors' Committee supports the motion of debtors. That Committee has given serious consideration to the questions raised by the motion, and though the members of that Committee are concerned about a substantial payment from property of the estate, they are persuaded that the expenditure will be beneficial to the bankruptcy case and the creditors over time.

■ Judge Cole of this District, with his customary thoroughness and insight, has summarized the state of the law regarding payment of pre-petition indebtedness in a chapter 11 context in *In re Structurlite Plastics Corp.*, 86 B.R. 922, 929–933 (Bankr.S.D.Ohio 1988). At p. 931 that court said:

As the foregoing discussion reveals, two divergent lines of authority have arisen with respect to the issue of whether a bankruptcy court is empowered to authorize a Chapter 11 debtor's payment of pre-petition claims. One line of authority, represented by the [*In re*] *FCX* [*, Inc.*, 60 B.R. 405 (E.D.N.C.1986)] and [*Official Committee of Equity Sec. Holders v.*] *Mabey* [, 832 F.2d 299 (4th Cir.1987)] cases, holds that the Code does not permit selective pre-confirmation payments to unsecured creditors.

However, Chateaugay and other decisions support the principle that a bankruptcy court may exercise its equity powers under § 105(a) to authorize payment of pre-petition claims where such payment is necessary to "permit the greatest likelihood of survival of the debtor and payment of creditors in full or al least proportionately." *In re Chateaugay Corp.*, 80 B.R. at 287.

At p. 932 that court said:

On the other hand, a per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code.

This position, derived from *In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y.1987) seems to us most to accord with the spirit of chapter 11, and we adopt it. See also *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr.W. D.La.1989).

 In applying the view of the law which we adopt, we consider that to justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process. We conclude that debtor here has met that burden. The unique nature of the relationships here involved is important in reaching this conclusion. Debtors' customers are the owners of the tools in question; they have paid for them, and now to withhold such payments from the toolmakers, debtors acting in effect as a conduit, will lead to the loss of competitive position by debtors, not only because toolmakers are antagonized, but also because customers will perceive unfair conduct on the part of debtors. We couple these facts with the intense competitive environments in the field of automotive suppliers at this time in reaching our conclusion. Powerful reinforcement of that conclusion is to be found in the support of the motion by the Unsecured Creditors' Committee, a body made up of business people who are well-qualified to assess the reality of the threat to the business of the debtors.

The Committee opposing the motion argued that the making of the present payments would open the gates to blackmail of debtors by others seeking the same advantage. This argument was effectively rebutted by the evidence that those in the industry have a clear understanding of the different positions of those providing tooling and those providing materials, the latter for the most part being the pre-petition creditors of debtors. Suppliers of materials will not be seeking payments on account of their pre-petition indebtedness. Toolmakers are recognized as a special case, for they consist of a small group. The number of good toolmakers is even more limited.

Further, in its opposition to the present motion, the Committee asserts that the Sixth Circuit is in agreement with authorities which hold that pre-petition indebtedness may not be paid in Chapter 11 except pursuant to a plan. We have reviewed the authority offered for this assertion, *Crowe & Associates, Inc. v. Bricklayers and Masons Union Local No. 2 (In re Crowe & Associates, Inc.)*, 713 F.2d 211 (6th Cir. 1983). The Committee seeks to interpret a comment, not necessary to the holding of the case, as one forbidding a bankruptcy court from making payments such as those here sought. Viewed in context, the comment is at best (for the Committee) ambiguous. We read it as recognizing that a bankruptcy court may exercise discretion in arriving at its conclusion on the question, as we do here.

The foregoing constitutes our findings of fact and conclusions of law.

## JUDGMENT ON DECISION ON MOTION RE PRE–PETITION TOOLING

The motion of debtors for an order authorizing the payment of pre-petition obligations to toolmakers having come on for hearing before the court, Honorable Burton Perlman, United States Bankruptcy Judge, presiding, and the issues having been duly heard and a decision having been rendered,

It is Ordered and Adjudged that the motion is granted.