### In re TIMBERHOUSE POST AND BEAM, LTD., Debtor.

### Bankruptcy No. 96–30639–11.

United States Bankruptcy Court,
D. Montana.

May 24, 1996.

Ralph B. Kirscher, Missoula, Montana, for Debtor.

Edward P. Nolde, Assistant Attorney General, Helena, Montana, for DOR.

Neal G. Jensen, Assistant U.S. Trustee, Great Falls, Montana, for U.S. Trustee.

claim includes additional interest accruing on the obligation to the date of bankruptcy.

## ORDER

JOHN L. PETERSON, Chief Judge.

In this Chapter 11 case, hearing was held on May 7, 1996, after notice, on Debtor's Motion for Approval of Post Petition Payment of Prepetition claim, together with objections thereto by the Office of U.S. Trustee ("UST") and Montana Department of Revenue ("DOR"). The Debtor introduced evidence in support of the motion through the president of the Debtor, Bruce Gardner. At the conclusion of the evidence, each party was granted five days to submit memoranda in support of their respective positions. Post hearing briefs have been filed by the Debtor and DOR, together with a prehearing memorandum filed by the UST.

The Debtor's motion lists 11 prepetition, unsecured creditors which the Debtor claims must be paid for that creditor to continue supply of materials to the Debtor for its ongoing business operation. The brief of the Debtor now lists seven creditors who should be paid to continue necessary and essential supply of material to the Debtor. The testimony of Gardner as to each creditor gave the nature of the debt and the alleged need for payment.

The creditors sought to be paid total $8,047.16, based on the following list of creditors, to-wit:

1. *Bitterroot Engineering and Design—* $800.00

This creditor provides structural plans for the construction of timber frames, in a timely fashion, which is crucial to the Debtor to perform customer contracts. Gardner stated no other firm can supply such service, and that it would be "inconvenient" to substitute another firm.

2. *Bolt and Anchor Supply—$831.22*

Gardner stated this creditor provides specialized hardware and fasteners used in assembling and raising timber frames built by the Debtor. There is no other local source for the supply and using another supplier would raise costs of construction, but no estimate was provided by Gardner. The Debtor presently has in its inventory a supply of these materials.

3. *Mafell—$651.38*

Mafell is a German company which specializes in producing manufactured woodworking equipment. Mafell is one of the two specialty companies in the world, and its product is essential to produce timber frames.

4. *Missoula Saws, Inc.—$728.53*

This creditor provides saw blade sharpening services to the Debtor. Gardner testified that service is essential to the Debtor's operation.

5. *Northern Energy, Inc.—$747.27*

This creditor provides propane for heating the Debtor's shop. Gardner stated that the Debtor has not sought another supplier, but the product is essential as a working condition for the employees.

6. *RBM Lumber, Inc.—$3,548.00*

This creditor supplies the timber for production of the Debtor's product. Gardner admitted there are other suppliers, but it is essential to have a committed timber supplier to continue the Debtor's business.

7. *Timber Edge Machine—$704.76*

This creditor supplies dowel nuts, a speciality product, used to assemble the timber frames, which is essential to continue the operation.

There was no evidence presented by Gardner that any of the above suppliers would stop future, post petition orders, even on a COD basis, or that any of these creditors would terminate such supply if the prepetition debt was not paid.

The DOR points out in its memorandum that the Debtor has only $4,000 cash on hand to pay the above creditors. Gardner testified the money would be available from the continued business operations of the Debtor, but provided no evidence projecting such income.

The motion of the Debtor is, in essence, one to elevate the prepetition unsecured

claims to an administrative expense under 11 U.S.C. § 503(b)(1)(A).[1]

Courts have espoused the view that the Bankruptcy Code does not permit the payment, post bankruptcy, out of the property of the estate, of bankruptcy debts. *In re White Beauty View, Inc.*, 70 B.R. 90, 92–93 (Bankr. M.D.Pa.1987); *In re J.T.L., Inc.*, 36 B.R. 860 (Bankr.E.D.Mo.1984).

In *Matter of B & W Enterprises, Inc.*, 713 F.2d 534, 537 (9th Cir.1983), the court specifically declined to adopt the "Necessity of Payment" rule "beyond the context of railroad recognition." In fact, the court rejected the doctrine entirely by stating—

What appellants seek is not subordination of a certain claim, but rather elevation of their claims over those of other creditors of the same class, the class of unsecured creditors. This is not a power given the courts by the 1978 Act. 3 *Collier on Bankruptcy*, ¶ 507.02 (15th ed. 1979).

*In re Palmer*, 167 B.R. 579, 588 (Bankr. D.Ariz.1994) and *In re USM Technology Corp.*, 158 B.R. 821, 827 n. 9 (Bankr.N.D.Cal. 1993) both follow *B & W Enterprises*, without mention of *In re Adams Apple*, 829 F.2d 1484 (9th Cir.1987), discussed below, by holding the bankruptcy court does not have the power to alter the priority scheme set forth in the Bankruptcy Code, citing *B & W Enterprises, supra*; *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573 (9th Cir.1985); *In re Tleel*, 876 F.2d 769 (9th Cir.1989); *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797 (9th Cir.1987); *In re Pacific Express, Inc.*, 69 B.R. 112, 115 (9th Cir. BAP 1986) and *Johnson v. First Nat'l Bank*, 719 F.2d 270, 273 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245.

■ The Ninth Circuit Court of Appeals in *In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir.1987), without citing *B & W Enter-*

*prises, North American Coin & Currency*, or *Technical Knockout Graphics* stated:

Cases have permitted unequal treatment of prepetition debts when necessary for rehabilitation, in such contexts as (i) prepetition wages to key employees; (ii) hospital malpractice premium incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts. *See* Ordin, *Case Comment, In re Texlon Corporation*, 596 F.2d 1092 (2nd Cir.1979): *Finality of Order of Bankruptcy Court*, 54 Amer.Bankr.L.J. 173, 177 (1980).[2]

*Adams Apple* involved the approval of post petition financing through a mechanism called cross-collateralization agreement, where the prepetition secured lender advanced funds post petition in return for collateral on all of the debtor's assets. *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 n. 9 (9th Cir. BAP 1992), explained the holding in *Adams Apple* as follows:

9. The validity of cross-collateralization provisions is not without dispute. At lease one Circuit has held that cross collateralization provisions are not authorized by the Bankruptcy Code. *See In re Saybrook Manufacturing Co.*, 963 F.2d 1490 (11th Cir.1992). The Ninth Circuit has indicated that a cross collateralization provision approved by the bankruptcy court falls within the protection of 364(e), but has left open the question of whether such provisions are illegal per se. *In re Adams Apple, Inc.* 829 F.2d 1484, 1488–89, n. 6 (9th Cir.1987). *In re Sun Runner Marine, Inc.*, 945 F.2d 1089 (9th Cir.1991), casts doubt on the validity of such cross collateralization provisions when the prepetition claim is not fully secured by holding that section 364 does not authorize the payment of a prepetition unsecured claim as a condition precedent to post petition financing.

---

1. Section 503(b)(1)(A) provides:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under § 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commission for services rendered after the commencement of the case:

2. This citation of authority is dubious at best. In the *Case Comment*, the author, without one citation of legal authority, prefaced the quote set forth in *Adams Apple* with the phrase ."I can recall authorizations to pay...." Indeed, the case comment dealt entirely with precode case law, not the 1978 Bankruptcy Code. Citation of one such legal authority is without precedential value.

*Sun Runner* further determined that the debtor may not use the mechanism of curing defaults and assuming an executory contract under section 365 to avoid this limit of authority under section 364.

Of course, the present case does not involve post petition financing, and so the precise holding of *Adams Apple* must be tempered in the case *sub judice*.[3] Indeed, *Adams Apple* dealt with post petition financing while adequate protection was proposed by giving the secured lender other collateral on its prepetition claim. The quote from *Adams Apple* above is dicta.

*In re Sun Runner*, 945 F.2d at 1092–1093, discussing credit obtained under § 364(b) of the Code as an administrative expense, firmly establishes that "section 364 does not, however, authorize the debtor to pay the lender's *prepetition* unsecured claim as a condition precedent to post petition financing." (Emphasis in original). Also, in applying § 363 of the Code to Chapter 11 debtors-in-possession, *In re Johns–Manville Corp.*, 60 B.R. 612, 617 (Bankr.N.Y.1986) states:

> Title 11 procedures are not meant to straitjacket a debtor, and a debtor must be allowed to marshall assets on an "as needed" basis. The policy behind the Code recognizes that the debtor needs a certain degree of freedom on its road to reorganization so that it might avoid precisely those pitfalls which brought it into bankruptcy initially. Given this latitude, it must be understood that § 363 cannot be construed "to permit of payments (uses of property of the estate) which are unequivo-

cally inimical to the theory and philosophy of the Bankruptcy Code." *In re J.T.L., Inc.*, 36 B.R. 860, 862 (Bankr.E.D.Mo.1984) (court made reference to the "ordinary course of business" as used in both §§ 363 and 364).

The Court raises the above discussions on §§ 363 and 364 since they are the principle vehicle by which the Code drafters have given the debtors-in-possession the means to continue operation of their business during reorganization by use of services and supplies "in the ordinary course of business." But one must bear in mind the admonition adopted in *White Motor*, 831 F.2d at 111–112, stating:

> The bankruptcy court properly stated that "[u]nder no circumstances can the debtor's authority to operate its business under Section 1108 of the Code or to use property of the estate in the ordinary course of business under Section 363 be interpreted or extended to permit the transformation of pre-petition debt to an administrative expense."

*White Motor* then concluded that the debtor-in-possession's authority under § 363 "simply did not empower it to alter ETC's [creditor] non-priority status on its pre-petition claims." *Id.*

 This Court adopts the bright line rule set forth in *B & W Enterprises, White Beauty View* and *J.T.L., Inc., supra*, that a prepetition unsecured claim cannot be elevated to an administrative expense since the scheme of the 1978 Bankruptcy Code does not allow this Court to change the classifica-

---

**3.** A different two-part test is applied where the debtor receives post petition support and the claim is thus allowed as a priority administrative expense. *See In re Climax Chemical Co.*, 167 B.R. 665, 666–667 (Bankr.N.M.1994). That two-part test is not applicable to the case at hand because the test applies to post petition suppliers. *In re White Motor Corp.*, 831 F.2d 106 (6th Cir. 1987) adopts a two-part test on post petition financing or supply of goods by credit. The *White Motor Corp.* test is taken from *In re Jartran*, 732 F.2d 584 (7th Cir.1984). The Seventh Circuit rejected the creditor's claim that the debt (yellow page ads based on prepetition contract) should be treated as an administrative expense, stressing that "the key fact is that the irrevocable commitment by [the parties] to place the ads was made before the filing of the petition in bank-

ruptcy." *Id.* at 586. The court held that it was the prepetition debtor that had induced the creditor to perform the service and supply the ads, but "no inducement by the debtor-in-possession was required because the liability for the costs of the ads was irrevocably incurred before the petition was filed. *Id.* at 588. *White Motor* concludes:

> A creditor provides consideration to the bankrupt estate only when the debtor-in-possession induces the creditor's performance and performance was rendered to the estate. If the inducement came from the prepetition debtor, then consideration was to that entity rather than to the debtor-in-possession. However, if the inducement came from the debtor-in-possession, the claims of the creditor are given priority. 831 F.2d at 110.

tion of claims set by Congress in the Code. Indeed, in *United States v. Noland,* —— U.S. ——, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) the Supreme Court again stated the courts could not change the legislative doctrine dealing with priority of claims.

> "Decisions about the treatment of claims in bankruptcy proceedings ... are not dictated or illuminated by principles of equity and do not fall within the judicial power of equitable subordination ..." *[In re] Burden,* 917 F.2d [115] at 122 [ (C.A.3 1990) ] (Alita, J., concurring in part and dissenting in part).

\* \* \* \* \* \*

We do hold that (in the absence of a need to reconcile conflicting congressional choice) the circumstances that prompt a court to order equitable subordination must not occur at the level of policy choice at which Congress itself operated in drafting the Bankruptcy Code. Cf. *In re Ahlswede,* 516 F.2d 784, 787 (C.A.9). ("[T]he (equity) chancellor never did, and does not now exercise unrestricted power to contradict statutory or common law when he feels a fairer result may be obtained by application of a different rule."), cert. denied *sub nom. Stebbins v. Crocker Citizens Nat. Bank,* 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975); *In re Columbia Ribbon Co.,* 117 F.2d 999, 1002 (C.A.3 1941) (court cannot "set up a sub-classification of claims ... and fix an order of priority for the sub-classes according to its theory of equity.")

Thus, the reason for such bright line test is quite obvious. The Code itself has provided vehicles to the debtor-in-possession to obtain credit, use cash collateral and otherwise obtain financial assistance under §§ 363 and 364, so long as the classification of creditors is not undone. Accordingly, the unsupported dicta in *Adams Apple* is without precedential authority and is plainly contrary to the recent admonition of the Supreme Court. On this basis, the motion of the Debtor–In–Pos-

session to pay prepetition unsecured claims must be denied.[4]

IT IS THEREFORE ORDERED the Debtor's Motion to Pay Prepetition Unsecured Claims is denied.

---

**4.** Even if the Court were to follow *Adams Apple,* I would conclude the evidence in support of the Debtor's application was lacking in that there was no evidence submitted that each of the unsecured creditors would deny the debtor post petition supplies and services. I hold such evidence is critical to adopting the *Adams Apple* test.

