In re CORNER HOME CARE, INC., Debtor.

No. 09–51451.

United States Bankruptcy Court, W.D. Kentucky.

Sept. 21, 2010.

Alan C. Stout, Stout Law Office, Marion, KY, Todd A. Farmer, Stout, Farmer & King, PLLC, Paducah, KY, for Debtor.

**ORDER DENYING RENEWED MOTION TO ALLOW CERTAIN POST–PETITION PAYMENTS OF PRE–PETITION DEBT TO H.D. SMITH, INC.**

THOMAS H. FULTON, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Renewed Motion to Allow Cer-

tain Post–Petition Payments of Pre–Petition Debt to H.D. Smith, Inc. to which the U.S. Trustee (Doc. # 140), Integra Bank, N.A. (Doc. # 159), and AmerisourceBergen (Doc. # 168) object. H.D. Smith, Inc. (Doc. # 167) responded to the renewed motion. This matter previously came before the Court on June 24, 2010, and an order was issued setting an evidentiary hearing on August 19, 2010. In addition to the evidentiary hearing, the Court ordered that ten percent of the post-petition accounts payable due to H.D. Smith, Inc. be placed in escrow pending resolution of the renewed motion. At the hearing, the Court considered the statements of Alan Stout, counsel for Corner Home Care, Inc. (the "Debtor"), Mark Whitlow, counsel for AmerisourceBergen ("Amerisource"), Edward King, counsel for Integra Bank, N.A. ("Integra"), Charles Merrill, counsel for the U.S. Trustee, Lisa Koch Bryant, counsel for H.D. Smith, Inc. ("H.D. Smith"), and the testimony of James K. Knauff and Terry McKinley.[1] Andy Woodford, counsel for Invacare, and Kent Durning, counsel for L.K. Research and Jim Knauff, appeared telephonically. This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and (O).

## I. FINDINGS OF FACT

On December 28, 2009, the Debtor filed its Chapter 11 petition. On January 1, 2010, the Debtor filed a motion to declare H.D. Smith a critical vendor, as well as several other vendors. The Court denied this motion on March 23, 2010. In reviewing the Debtor's disbursements, it became clear that certain post-petition payments were made on pre-petition debt during the first month of the bankruptcy in contravention of the Bankruptcy Code. H.D. Smith received $141,075.49 from the Debtor. This amount represents debt incurred by the Debtor within 20 days of the bankruptcy filing. Following its standard operating procedure, the Debtor paid this amount over several checks as the invoices covering this time period became due. Unfortunately, James Knauff, acting as management for the Debtor, failed to monitor Debtor's payments sufficiently and permitted payment on pre-petition debt. There remains approximately an additional $600,000 owed to H.D. Smith for pre-petition debt. The Debtor was aware that in order to make any payments for pre-petition debts with post-petition funds, it needed court approval. H.D. Smith was also aware of the need for court approval. In an effort to legitimize these unauthorized payments to H.D. Smith, the Debtor filed the instant motion on May 25, 2010. H.D. Smith has indicated that in the event that this motion is denied, it will no longer be willing to conduct business with the Debtor under the same terms. H.D. Smith had already ceased shipping to the Debtor for one day in response to a court order denying the application to employ L.K. Research.

In order to provide services to its patients, the Debtor purchases pharmaceuticals and durable medical equipment ("DME") from H.D. Smith. Prior to beginning to do business with H.D. Smith, the Debtor would purchase its pharmaceuticals from Amerisource and some of its DME from Invacare. The pricing from Amerisource and Invacare was competitive with the pricing available from H.D.

---

1. The Debtor called Mr. McKinley as its witness. While it is clear that H.D. Smith will be affected by the resolution of this matter, it is less clear that H.D. Smith has any rights to seek critical vendor status and as such, H.D. Smith may have lacked standing to participate in the hearing. *See In re Kmart Corp.,* 359 F.3d 866, 870–71 (7th Cir.2004).

Smith. H.D. Smith offered an advantage in that it was able to provide the Debtor with services equivalent to six or seven other vendors in one. Additionally, H.D. Smith would provide the Debtor with next-day shipping on most of the pharmaceuticals and DME. This allowed the Debtor to reduce its inventory and avoid spoilation of the items with relatively short shelf lives. The Debtor currently places orders with H.D. Smith in the range of $75,000 to $100,000 per week. Beyond reducing inventory and avoiding waste, the Debtor was able to operate more efficiently using H.D. Smith as its primary vendor. The Debtor reduced its number of warehouses from five to one, as well as its number of pharmacies. The Debtor no longer carried duplicate inventory in its various locations. H.D. Smith is able to sell the pharmaceuticals and DME on an as needed basis, rather than in case lots. These improvements to operations were all implemented prior to the filing for bankruptcy protection.

Other vendors that could provide the required services include McKesson, Cardinal, Harvard, and possibly Amerisource. Mr. Knauff, on behalf of the Debtor, contacted McKesson who is unwilling to do business with the Debtor at this time. Cardinal did not return calls, and Mr. Knauff believes that Cardinal mainly does business with hospitals. He did not contact Harvard. Evidence showed that Amerisource could provide the DME, but Mr. Knauff indicated that he was unaware of the pricing or payment terms currently being offered. Any of his conversations with Amerisource suggested that the terms would be C.O.D. which Mr. Knauff thinks would not be feasible with the Debtor's current cash flow. Additionally, Mr.

Knauff questioned the quality of products that the Debtor would receive from a new vendor. It is clear, however, that Debtor is capable of switching vendors as it changed its primary vendor to H.D. Smith in 2007, although the Debtor does not have any source of financing that would facilitate such a changeover at the present time.

## II. CONCLUSIONS OF LAW

■ The advent of the critical vendor motion can be said to have evolved from the Doctrine of Necessity. This doctrine is based on the "necessity of payment" rule, as recognized by the Supreme Court in *Miltenberger v. Logansport Railway*, 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882). Judge Learned Hand applied this doctrine beyond the railroad context by recognizing how post-petition payments to unsecured creditors for pre-petition debts could protect the secured creditors. *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945).[2] Basing the argument on the necessity of making the payments for an effective reorganization, debtors-in-possession regularly attempt to convince a bankruptcy court to equitably permit post-petition payments on pre-petition unsecured debt prior to acceptance of a plan. *See, e.g., In re Eagle–Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr.S.D.Ohio 1991); *In re Structurlite Plastics Corp.*, 86 B.R. 922, 932 (Bankr.S.D.Ohio 1988) (denying the motion but recognizing in dicta that there could be rare instances which would permit payment of pre-petition debt). Even though critical vendor motions have become standard operating procedure as part of first day orders, the granting of

---

**2.** Since both secured creditors, Integra and Amerisource, have objected to this motion, it is unclear that the treatment of H.D. Smith as a critical vendor would offer any protection to the secured creditors or that the secured creditors desire such protection.

such motions should only be done in the rarest of circumstances.

■ Section 105(a) of the Bankruptcy Code provides a portion of the statutory basis for granting a critical vendor motion in that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." But it must be recognized that § 105(a) grants broad equitable powers over the administration of a case and therefore any decision is well within the discretion of the court. Even with a broad grant of equitable authority, the courts have still split on whether the authority is sufficient to permit preplan payment of pre-petition unsecured claims. The Fourth, Fifth, and Ninth Circuit, as well as some lower courts have held that there is no power in § 105 to permit a court to allow such payments. *See, e.g., Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299 (4th Cir.1987); *B & W Enters., Inc. v. Goodman Oil Co. (In re B & W Enters., Inc.)*, 713 F.2d 534 (9th Cir. 1983); *Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt. Inc.)*, 4 F.3d 1329 (5th Cir.1993); *In re FCX, Inc.*, 60 B.R. 405 (E.D.N.C.1986); *In re Timberhouse Post & Beam, Ltd.*, 196 B.R. 547 (Bankr.D.Mont.1996). Only the Third Circuit and several other lower courts have held that such power can be found within § 105. *See, e.g., In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir.1981); *In re Just For Feet*, 242 B.R. 821, 821 (D.Del.1999); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279 (S.D.N.Y.1987); *In re CoServ, L.L.C.*, 273 B.R. 487 (Bankr.N.D.Tex.2002); *In re Wehrenberg, Inc.*, 260 B.R. 468 (Bankr. E.D.Mo.2001). The Seventh Circuit has not declared a *per se* prohibition on pre-plan payments to unsecured creditors but instead appears to be waiting for a lower court to articulate the proper foundation for the granting of a critical vendor motion. *See In re Kmart Corp.*, 359 F.3d 866 (7th Cir.2004). While the Sixth Circuit has never directly addressed this issue, other courts in this Circuit have found that the equitable powers of a bankruptcy court permit granting critical vendor motions. *See, e.g., In re Eagle–Picher Indus., Inc.*, 124 B.R. at 1023; *In re Structurlite Plastics Corp.*, 86 B.R. at 932 (relying on the reasoning of *In re Chateauguay Corp.*, 80 B.R. 279); *In re Phoenix Rest. Grp., Inc.*, No. 301–12036 (Bankr.M.D.Tenn.2001) (order granting critical vendor motion). Recognizing the need for flexibility in the administration of a Chapter 11 bankruptcy, the latter position which permits the granting of critical vendors motions is more in keeping with the spirit of Chapter 11. In order to justify the payment of a pre-petition unsecured creditor, the court in *Eagle–Picher* required a showing that "the payment is necessary to avert a serious threat to the Chapter 11 process." *In re Eagle–Picher Indus., Inc.*, 124 B.R. at 1023. This test, however, does not adequately address the extraordinary nature of this remedy, the shift in jurisprudence away from granting such motions, nor the rarity with which it should be granted.

The Seventh Circuit more fully considered the statutory basis for critical vendor motions and the authority behind § 105(a). The section does not "create discretion to set aside the Code's rules about priority and distribution" as it is the power to implement, not override. *In re Kmart*, 359 F.3d at 871. It certainly would not authorize the full payment of an unsecured creditor, unless all unsecured creditors are paid in full. *Id.* The continued codification of bankruptcy law suggests a shift

away from the "doctrine of necessity" which emerged when there was even more discretion in setting priorities for payments of debt. *See id.* The court considered other provisions of the Code which could be implemented through an order granting a critical vendor motion but the only section remotely feasible was § 363(b)(1). *Id.* at 872. But since the underlying order was "unsound no matter how one reads § 363(b)(1)," the court did not decide whether the section does permit such payments. While this restriction on the flexibility available to a debtor could be seen as problematic to a successful reorganization, it would actually force vendors to decide to do business with the newly organized debtor solely based on its current financial condition. Vendors would not be able to ask for special treatment and debtors would not be bullied or manipulated by overreaching creditors. While a critical vendor motion may still be a viable possibility for a debtor in the Seventh Circuit, such orders will not give the debtor *carte blanch* to satisfy "critical" vendors who are trying to circumvent the Code.

■ A court, in considering the impact of *In re Kmart,* has developed a three-prong test to determine critical vendor status: "(1) the vendor must be necessary for the successful reorganization of the debtor; (2) the transaction must be in the sound business judgment of the debtor; and (3) the favorable treatment of the critical vendor must not prejudice other unsecured creditors." *In re United American, Inc.,* 327 B.R. 776, 782 (Bankr. E.D.Va.2005).

## A. NECESSITY

■ The beginning point in analyzing the necessity of the vendor to the successful reorganization of the debtor is to recognize this is more than mere convenience, this requires a showing of substantial necessity. *In re NVR L.P.,* 147 B.R. 126, 128 (Bankr.E.D.Va.1992). Necessity has been characterized as "necessary to avert a serious threat to the Chapter 11 process." *In re Eagle–Picher Indus., Inc.,* 124 B.R. at 1023. The requirement for necessity has been further clarified in *In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr.N.D.Tex.2002):

> First it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks a probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's pre-petition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498. For the goods of a vendor to be necessary, there can be no alternative. *In re United American, Inc.,* 327 B.R. at 782. This means more than that it is more cost-effective to deal with the current vendor. *Id.* H.D. Smith provides the Debtor with a variety of fungible goods in the form of pharmaceuticals and DME. The evidence suggests that H.D. Smith provides these goods at a lower cost and on better terms than Amerisource, Cardinal, McKesson, or Harvard. While Cardinal and McKesson have indicated that they will not do business with the Debtor, Harvard was never contacted by the Debtor and Amerisource has only been shown to be unwilling to do business with the Debtor under the same favorable terms as H.D. Smith. This does not support a determination that there is no alternative source of the required goods. Even if the Debtor

had shown that H.D. Smith was the only provider of the required goods, the Debtor would have to also show that there were no alternative means of doing business with H.D. Smith, other than the extraordinary act of making pre-plan payments for pre-petition debt. This could have been accomplished through some form of post-petition financing to provide H.D. Smith with the necessary assurance of payment. The Debtor has indicated that it is unable to acquire post-petition financing because lenders are unwilling to do business with the Debtor. This "would be a compelling market signal that reorganization is a poor prospect and that the debtor should be liquidated post haste." *Id.* It is more difficult to determine a vendor's intent to continue to do business with a debtor without exceptional treatment. Mr. McKinley has indicated that H.D. Smith will be unwilling to supply the Debtor on the current terms if the critical vendor motion is denied. This is not sufficient as "[a]nyone can *say* that. The real question is whether he *means* it, that is, his *actual* intent." *In re United American,* 327 B.R. at 783 (emphasis original). Judge Easterbrook has further explained that it is unlikely

> that a vendor would walk away from a relationship with a debtor. Each new delivery produced a profit ... why would any vendor drop the account? That would be a self-inflicted wound. To abjure new profits because of old debts would be to commit the sunk-cost fallacy; well-managed businesses are unlikely to do this. Firms that disdain current profits because of old losses are unlikely to stay in business. They might as well burn money or drop it into the ocean.

*In re Kmart Corp.,* 359 F.3d at 873. While it is unlikely that H.D. Smith actually intends to cease accepting funds from the Debtor and making profits on continued business, this determination is not necessary since there are alternatives for the Debtor. Finally, H.D. Smith only indicated that it would be unwilling to continue to do business under the current terms, not that it would be unwilling to do business with the Debtor. This would indicate that H.D. Smith, with appropriate assurances of payment, is willing to provide the goods, thus belying the notion that it is a critical vendor requiring exceptional treatment through pre-plan payments.

### B. BUSINESS JUDGMENT[3]

 The decision to treat a vendor as critical must show sound business judgment on the part of the debtor. Granting this status to one vendor requires consideration of all other creditors and a careful crafting of the remedy to the circumstances of the case. *In re United American,* 327 B.R. at 784. The remedy can not be a windfall for the creditor. "There must be an obligation on the part of the critical vendor to provide future supplies and services." *Id.* In this case, the Debtor made payments to H.D. Smith without court authorization. To the extent that the conduct of the parties represents the agreement reached which would have been part of a granted critical vendor motion, it suggests that the Debtor has not exercised sound business judgment. The pre-plan payments made to H.D. Smith did not exceed the amount due for goods provided within twenty days of the filing of the petition. These funds may be subject to a reclamation claim as discussed below.

**3.** All three prongs must be satisfied by a debtor. Since the Debtor has failed to show that H.D. Smith is necessary for the successful reorganization of the debtor, analysis of the remaining two prongs is, similarly, not strictly necessary.

H.D. Smith has not received its entire $600,000 pre-petition claim which would show some restraint on the part of the Debtor. But there is no obligation that H.D. Smith continue to do business with the Debtor. When H.D. Smith learned that the Court had denied the Debtor's application to employ L.K. Research and James Knauff, H.D. Smith froze the Debtor's accounts. The Debtor paid H.D. Smith over $140,000 on pre-petition debt and received in exchange nothing more than a naked promise by H.D. Smith to conduct business as long as H.D. Smith felt like working with the Debtor. It is poor business judgment to pay $140,000 to a vendor on a pre-existing debt and receive nothing in exchange. While normally the payment of a pre-existing debt would not provide consideration to support a contract, with the filing of the bankruptcy, the Debtor is able to treat H.D. Smith like all of its other unsecured creditors. Therefore, this pre-plan payment allowed H.D. Smith to have the funds earlier than other unsecured creditors which would have supported any reasonable requirements that the Debtor should have placed on H.D. Smith.

## C. PREJUDICE TO OTHER CREDITORS

■ Finally, it must be shown that there is no prejudice to other creditors. "The application of the Doctrine of Necessity offends the principal of equal treatment of creditors less when the other creditors of the estate are not prejudiced—and may be benefitted—by its application." *In re United American*, 327 B.R. at 784. The Debtor made no showing that there would be no prejudice to other creditors. In fact, the objections filed by AmerisourceBergen, Integra, and the United States Trustee show that creditors certainly believe this exceptional treatment is prejudicial.

The Debtor has not met its burden to show that there is no prejudice.

The Debtor has failed to satisfy this three-prong test to demonstrate that H.D. Smith is a critical vendor and entitled to exceptional treatment. The Debtor has provided no new evidence which would suggest that the Court's order denying the Motion to Declare Creditors, Critical Vendors, and to Allow Payment of Pre–Petition Debts was erroneous. The Court, therefore, denies the Renewed Motion to Allow Certain Post–Petition Payments of Pre–Petition Debt to H.D. Smith, Inc. There still remains the issue of the $141,075.49 received by H.D. Smith from the Debtor.

■ The pre-plan post-petition payment is voidable by the debtor-in-possession. "[T]he trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and that is not authorized under this title or by the court." 11 U.S.C. § 549(a). The payment is not authorized by the Code, nor is it authorized by this Court. If the trustee seeks to avoid this transfer, H.D. Smith may be liable on the transfer. *See* 11 U.S.C. § 550. The avoidance powers of the trustee are limited by § 546. H.D. Smith may have been entitled to reclamation of such goods sold to the Debtor within 45 days of commencement of the case. 11 U.S.C. § 546(c). "If the seller of goods fails to provide notice . . ., the seller still may assert the rights contained in section 503(b)(9)." *Id.* H.D. Smith's possible reliance on the belief that it would receive its entire pre-petition debt as a critical vendor could have led it not to have filed for reclamation of those goods. Since H.D. Smith is not a critical vendor, it will be allowed the opportunity to amend its claim as an administrative expense to the

130

extent of "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). This amended claim will be subject to the objection of parties in interest.

The renewed motion of the Debtor to authorize the post-petition payments to H.D. Smith having come before the court for hearing, the issues having be duly heard, based upon the entire record in this case, and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Renewed Motion to Allow Certain Post–Petition Payments of Pre–Petition Debt to H.D. Smith, Inc. is DENIED.

IT IS FURTHER ORDERED that H.D. Smith shall have twenty days from entry of this order to file an amended proof of claim asserting the administrative status of the portion of the claim relating to those goods sold within twenty days of the filing of the bankruptcy petition. This will be done pursuant to 11 U.S.C. § 503(b)(9). Allowance of this claim is dependent on the return of the $141,075.49 to the Debtor.