**In re GULF AIR, INC., d/b/a Trans-Ocean Airways, Inc., Debtor.**

**Bankruptcy No. 89BK51100.**

United States Bankruptcy Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Dec. 15, 1989.

Jolly W. Matthews, Gulfport, Miss., Gerald H. Schiff, Opelousas, La., for debtor.

## ORDER WITH REASONS AUTHORIZING PAYMENT OF EMPLOYEE–RELATED PRE–PETITION CLAIMS

W. DONALD BOE, Jr., Bankruptcy Judge.

Gulf Air, Inc. ("Debtor") filed a Chapter 11 petition on December 8, 1989 when it was unable to meet its payroll. This charter air carrier has approximately 550 employees including staff personnel, maintenance personnel, pilots, flight engineers, and flight attendants. These employees are located at various points in the United States including New Iberia, New York City, Los Angeles, Chicago, Boston and Philadelphia. Several days ago, charter escrow funds for completed flights were freed up by Court order, which provides financial wherewithal, though limited, to continue operations.

The Debtor today filed a motion to pay certain pre-petition employee-related expenses. That original motion has for all

practical purposes been superseded by an Amended and Supplemental Motion for Authority to Pay Certain Pre–Petition Claims ("the Motion"), which was filed later today, and which is the subject of this Order.

The Motion seeks Court authorization to pay all pre-petition amounts due to salaried employees, hourly employees, and flight crew members, including actual and necessary expenses incurred in the performance of their duties, and flight hours pay, "rig time", and per diem expenses that supplement the base salary owed to flight crew members. The Motion also seeks authorization for payment of pre-petition health and life insurance premiums for employees and their dependents, and workers' compensation premiums. The Motion urges that, without immediate payment, many of the Debtor's skilled employees will abandon their employment, and that immediate payment is essential to reorganization efforts. The Court agrees.

Gulf Air's employees have not received salary or wages for three weeks. The Court finds that, under the particular circumstances of this case, notice and hearing is impractical, because the Court must act immediately to safeguard against loss of going-concern values. *See* 11 U.S.C. Sec. 102(1).

While pre-petition claims are normally disposed of in a plan of reorganization and in accordance with statutory priorities, there are well-established "necessity of payment" and similar exceptions. These exceptions emerged in 19th Century railroad bankruptcies and have continued to date. *See, e.g., Gregg v. Metropolitan Trust Co.,* 197 U.S. 183, 25 S.Ct. 415, 49 L.Ed. 717 (1905) ("... [T]he payment of the employees of the [rail]road is more certain to be necessary in order to keep it running than payment of any other class of previously incurred debt", but, according to Justice Holmes, payment for previously supplied railroad ties was not); *Miltenberger v. Logansport, C. & S.W.R. Co.,* 106 U.S. 286, 311, 1 S.Ct. 140, 162, 27 L.Ed. 117 (1882) ("Many circumstances may exist which may make it necessary and indispensable ... for the receiver to pay pre-ex-

isting debts of certain classes out of the earnings of the receivership, or even the *corpus* of the property, under an order of the court, with a priority of lien.... [T]he discretion to do so should be exercised with great care."); and *In re Penn Central Transp. Co.,* 467 F.2d 100, 102 n. 1 (3rd Cir.1972) (payment not allowed for pre-petition utilities where discontinuance of service was not threatened); *In re Boston and Maine Corp.,* 634 F.2d 1359 (1st Cir. 1980), *cert. denied,* 450 U.S. 982, 101 S.Ct. 1518, 67 L.Ed.2d 817 (1981) (discusses "necessity of payment" and related exceptions and views decisions based on "economic duress" as not exhausting the limits of what constitutes "necessity".)

The "necessity of payment" doctrine has been applied in nonrailroad bankruptcies. *See, e.g., Dudley v. Mealey,* 147 F.2d 268 (2nd Cir.1945), *cert. denied,* 325 U.S. 873, 65 S.Ct. 1415, 89 L.Ed. 1991 (1945), where Judge Learned Hand observed:

"Let it [a hotel] once be shut down, and it will lose much of its value.... Some priority [to tradesmen supplying the hotel pre-petition] may be essential to preservation of the business during that period as it is later." *Id.* at 271.

In airline bankruptcies, the "necessity of payment" doctrine can apply almost as a natural extension of the railroad cases. *See In re Ionosphere Clubs, Inc. and Eastern Air Lines, Inc.,* 98 B.R. 174 (Bankr.S.D.N.Y.1989), which authorized payment of all pre-petition wage and other employment-related claims of active airline employees beyond the $2,000 maximum set by 11 U.S.C. Sec. 507(a)(3). In the *Braniff Airlines* Chapter 11 case filed in the Middle District of Florida, Orlando Division, in late September 1989, Bankruptcy Judge Timothy Corcoran, III, has in an unreported opinion authorized payment of pre-petition wage and other claims of airline employees to allow that air carrier to continue to function as a going concern.

The Court finds and concludes that grant of the Debtor's Motion in its entirety is in the best interest of creditors, the Debtor, and its employees, and is "necessary", in fact, indispensable at this time for any

successful reorganization. An air carrier, no less than a rail carrier, is more than the sum of its parts. Despite the capital-intensive nature of the railroad industry, and to a lesser extent, the airline industry, retention of skills, organization, and reputation for performance must be considered valuable assets contributing to going concern value and aiding rehabilitation where that is possible.

ACCORDINGLY, IT IS HEREBY ORDERED that the Motion Requesting Authorization to Pay Pre–Petition Claims of Employees, Principal Life Insurance Company, and Kansas City Fire and Marine Insurance Company be, and it hereby is, GRANTED.

IT IS FINALLY ORDERED that the Clerk of the Court shall serve this Order upon the entire mailing matrix.