**In re EQUALNET COMMUNICATIONS CORP., EqualNet Corporation, USC Telecom, Inc., Debtors.**

Nos. 00–37350–H4–11, 00–37351–H4–11, 00–37353–H4–11.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Aug. 9, 2000.

John F. Higgins, IV, Porter & Hedges, Houston, TX, for debtors.

Joseph J. Wielebinski, Jr., Mark Harrington Ralston, Munsch Hardt Kopf Harr & Dinan, Dallas, TX, for Joint Committee of Unsecured Creditors.

## AMENDED ORDER GRANTING MOTION FOR AUTHORITY TO (i) PAY INDEPENDENT CONTRACTOR PREPETITION COMPENSATION AND EXPENSES AND (ii) ADJUST CUSTOMER BILLS FOR PREPETITION CREDITS

WILLIAM R. GREENDYKE,
Bankruptcy Judge.

On the 15th day of September 2000, this Court conducted an evidentiary hearing on several motions, including a motion seeking approval of Debtor in Possession Financing, as well as the instant motion, the Emergency Motion for Authority to (i) Pay Independent Contractor Prepetition Compensation and Expenses and (ii) Adjust Customer Bills for Prepetition Credits (the "Motion"), filed by Equalnet Communications Corp., EqualNet Corporation and USC Telecom, Inc. (collectively, the "Debtors"). At the conclusion of the hearing, the Court announced its ruling on the financing motion, which included a conclusion that, based on the Eleventh Circuit's ruling in the case of *Saybrook Mfg. Co., Inc.,* 963 F.2d 1490 (11th Cir.1992), a secured creditor's prepetition loan balance could not be paid off and/or "rolled into" a postpetition line of debtor in possession financing, with resultant enhancement of collateral position and administrative priority. After the Court's denial of this aspect of the DIP financing motion, counsel for the creditor argued that the Court's rationale could not be applied to the two motions without reaching the same result. In effect, counsel told the Court that consistency warranted denial of the instant motion. The Court took the matter under advisement. Having reviewed the Motion, it appearing that the relief requested is necessary to preserve the Debtors' ongoing operations, having considered the circumstances and the nature of the relief requested, the Court finds that the Motion is meritorious, is in the best interests of the Debtors' estates, their creditors, equity holders and all parties in interest, and should be GRANTED, however, relief should be limited to the extent set forth (and for the reasons expressed) below.

■ The Court has previously noted in similar situations [1,2] that the payment of prepetition claims prior to confirmation of a plan in a Chapter 11 case has been proscribed by the 5th Circuit in *Matter of Oxford Mgmt. Inc.,* 4 F.3d 1329 (5th Cir. 1993). In certain cases, courts in this district have found exception to this general rule of nonpayment. These exceptions arise primarily out of common sense and the presence of a legal or factual inevitability of payment. For instance, in certain situations turnover of cash collateral would be allowed, recognizing that a properly noticed but unopposed motion to lift would in all likelihood be granted. Second, in a case involving assumption of an executory contract or lease, the cure of past due amounts would be allowed as a proper and inevitable administrative expense,[3] albeit in part attributable to a prepetition claim. Third, certain cases involve business transactions which are at once individually minute but collectively immense and critical to the survival of the business of the debtor. Examples include the redemption of prepetition retail coupons in a consumer products case, the honoring of credit card debits, credits and chargebacks in a retail

---

1. *See In re Tri–Union Dev. Corp.,* 253 B.R. 808 (Bankr.S.D.Tex.2000).

2. *Cf. In re Ionosphere Clubs, Inc.,* 98 B.R. 174 (Bankr.S.D.N.Y.1989) and *In re Eagle–Picher Industries, Inc.,* 124 B.R. 1021 (Bankr. S.D.Ohio 1991), which describe the application of the so-called "doctrine of necessity" or "necessity of payment rule." The doctrine of necessity describes a common law line of cases which acknowledge the existence of sufficient judicial power in the bankruptcy court to allow a Chapter 11 debtor to pay prepetition claims prior to confirmation of a plan when such payment is vital or "necessary" to the continued operation of the debtor. It is this line of cases the Debtors now ask us to embrace in spite of the *Oxford Management* holding.

3. 11 U.S.C. § 365(b)(1).

department store case or, as in the case at bar, the issuance of billing credits to retail customers in connection with prepetition telephone services and invoices. The impact of the failure to allow payment of these sorts of "nuisance" items would be devastating to a proposed reorganization in the context of a retail market. A quick corollary is that such a failure to pay and its consequent loss of customer base would impair value of the business on either a going concern or liquidation basis. Further, the prepetition claims in some cases might be subject to offset or recoupment or both. Fourth, certain types of claims enjoy a priority status in addition to being sometimes critical to the ongoing nature of the business. For instance, employee wage claims and certain tax claims are both priority claims in whole or in part. The need to pay these claims in an ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted. With respect to taxes, certain prepetition tax claims, such as sales taxes, could be trust fund claims. Obviously the legal right to payment of such claims at any time appears irrefutable.[4] To date, only in these types of situations has the court found the existence of sufficient legal or equitable basis to suggest an exception to the Circuit's *Oxford Management* rule. Finally, one very important set of factors which play a part in any potential contested matter is the level of sophistication of the parties, the sophistication of their representation, the sufficiency of notice, the extent to which there is unanimous support or strong disagreement, and whether or not there exists potential harm to any sort of "silent" or unrepresented constituencies who rightfully depend upon the Court to follow and apply the law. Obviously, in a two party dispute involving knowledgeable and experienced counsel, the parties are generally free to make almost any agreement they want. In a bankruptcy context, some issues clearly involve interests upon which the parties such as the debtor, the unsecured creditor's committee, the major lenders, and major unsecured groups such as bondholders can agree. If there is agreement among *all* of the constituencies and if each of them is a sophisticated, competently represented, knowledgeable constituency, the Court is generally loathe to substitute its business judgment about the consequences of the proposed course of action for that of the parties that hold the real financial interest. In such situations, the Court might be inclined to accept the agreement of the parties concerning the necessity of a proposed course of action. The Court hastens to add, however, that bankruptcy cases are unique in that they sometimes require the Court to insure due process in a sort of class action sense. The level of potential judicial involvement in the process rises dramatically when the matter before the court requires a legal decision which could affect the rights of the unrepresented or change or dictate the course of the case without the practical or economic opportunity for them to have their voices heard. It will always be important to the Court to consider the foregoing factors as part of its calculus of how to deal with the law and facts in connection with litigation or, indeed, agreed orders in the context of a bankruptcy case.

In light of the foregoing, the motion under present consideration presents both successful and unsuccessful attempts to fall within the described exceptions. First, the contract employee will be found to be necessary to the estate and her claim tantamount to a priority wage claim (a number of which have already been allowed in this case). To that extent, it will be limited to the statutory cap of $4,300 and allowed in that amount. On the other hand, the Debtors' request to provide their customers with billing credits with respect

---

4. *Matter of Al Copeland Enterprises, Inc.,* 991 F.2d 233 (5th Cir.1993).

to billing and services errors attributable to prepetition periods as incurred in the ordinary course and scope of the Debtors' business operations will be allowed under the above characterized nuisance/necessity exception. It is therefore

ORDERED that Debtors are authorized to pay the prepetition claim of Brigid K. Sheppard up to the amount of $4,300, with the balance to be allowed as a general unsecured claim. It is further

ORDERED that the Debtors are hereby authorized to provide their customers with billing credits in respect of billing and services errors relating to prepetition periods as incurred in the ordinary course and scope of the Debtors' business operations.